Argued and submitted November 29, 1989, affirmed May 30, reconsideration denied October 3, petition for review allowed December 4, 1990 (310 Or 791)

STATE OF OREGON,
*Respondent,*

*v.*

CHARLES LESLIE PORTER,
*Appellant.*

(10-88-08835; CA A51130)

792 P2d 471

Peter Gartlan, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Acting Public Defender, Salem.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

**ROSSMAN, J.**

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, asserting that the trial court erred in denying his motion to suppress evidence obtained during a warrantless search of his automobile. He argues that, after discovering evidence of an open container violation, ORS 811.170, an officer has no authority to search an individual's car for additional evidence of the same offense. We affirm.

During the afternoon of September 29, 1988, Springfield Police Officer Umenhofer noticed defendant, because he was driving an automobile that was similar to Umenhofer's. When Umenhofer caught defendant's eye, defendant looked away furtively. Suspecting that the car might be stolen, Umenhofer ran a records check and discovered that there was an arrest warrant outstanding for the car's registered owner. Defendant fit the description of the registered owner, and Umenhofer stopped the car.[1]

After confirming that defendant was the registered owner and that he was wanted on a Nevada fugitive warrant, Umenhofer arrested him. As defendant got out of his car, Umenhofer saw an open beer can behind the driver's seat. He placed defendant in the back seat of the patrol car and returned to the other car. He removed the beer can, which still contained some beer, placed it on top of the car and then searched the front seats, back seats and floor for more open beer cans. Under the front seat, he found a mirror covered with razor marks and "some slight residue." At that point, he looked inside the closed box between the front bucket seats, where he found four baggies of methamphetamine and a "cut down" straw on which there was white residue.

The issue is whether, having discovered the open beer can, Umenhofer had authority to look for additional open containers in defendant's car. According to defendant, a violation of the open container law is not a crime, but a Class B traffic infraction. ORS 811.170. Therefore, he argues, the officer could not have searched his automobile on the ground that he had probable cause to believe that a crime had been committed. *See* ORS 131.005(11). Moreover, he asserts, ORS

---

[1] Defendant concedes that the stop was lawful.

133.310(1)(j) prohibits an officer from arresting an individual for committing a traffic infraction. Because the officer had no authority to arrest him, he contends, there could be no valid search incident to an arrest.[2] No other exception, he argues, gave Umenhofer authority to make the warrantless search.

That argument ignores ORS 810.410, which provides, in pertinent part:

> "(2)  A police officer may issue a citation to a person for a traffic infraction at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act when the traffic infraction is committed in the police officer's presence.
>
> "(3)  A police officer:
>
> "(a)  Shall not arrest a person for a traffic infraction.
>
> "(b)  May stop and detain a person for a traffic infraction *for the purposes of investigation reasonably related to the traffic infraction,* identification and issuance of citation." (Emphasis supplied.)

In this case, during the course of a lawful stop, Umenhofer saw an open beer can in plain view in the car. That discovery justified an investigation "reasonably related to the traffic infraction" regarding open containers.[3] *See State v. Horton,* 86

---

[2] The state does not contend that the officer could search defendant's vehicle incident to his arrest on the fugitive warrant. *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

[3] The dissent's approach to this case is novel, to say the least. From a creative reading of *State v. Jackson,* 296 Or 430, 677 P2d 21 (1984), it appears to argue that an officer who has lawfully stopped a vehicle may seize an open beer can that is in plain view if it is standing upright, but not if it has fallen on its side. From that it concludes that Umenhofer did not have authority to examine the beer can that he saw behind the car seat, because it had fallen flat. However, *State v. Jackson, supra,* simply does not hold that "if the trial court found that the open beer cans were lying flat on the floorboard, no 'immediately apparent' violation of law would have existed." 102 Or App 22, 29. Rather, the court noted that the defendant testified that the beer cans "were *empty* and not sitting up." 296 Or at 440 n 5. It concluded that, because there was conflicting evidence regarding whether an open container violation was immediately apparent, the case should be remanded for further findings.

The dissent also argues that Umenhofer did not have authority to search for further evidence of an open container violation, because there was insufficient evidence of the violation to begin with. It apparently believes that there is evidence of an open container violation only if the beer is still cold and there is a substantial amount left in the can. 102 Or App 22, 29. Our reading of ORS 811.170, however, reveals nothing to indicate that a violation of the statute depends on the amount of beer involved, the angle of the beer can, or the temperature of its contents. Rather, it prohibits keeping open bottles containing "*any* alcoholic beverage" in one's vehicle

Or App 199, 202, 738 P2d 609 (1987). Umenhofer conducted such a search when he looked under the driver's seat for additional open beer cans. When he found the razor-scratched mirror under the seat, he had probable cause to believe that a crime had been committed, justifying his subsequent search of the closed glove box. *See State v. Hayes,* 99 Or App 322, 781 P2d 1251 (1989); *State v. Cole/Hood,* 87 Or App 93, 741 P2d 525, *rev den* 304 Or 280 (1987). The trial court did not err in denying defendant's motion to suppress evidence obtained in that search.

*State v. Tallman,* 76 Or App 715, 712 P2d 116 (1985), on which defendant relies, dictates the same result. In *Tallman,* an officer saw the defendant and a companion parked in a dark lot. When they saw the officer, they acted nervous and appeared to reach down, as if hiding something. When the officer approached the car, he smelled burning marijuana and asked the defendant and his companion to get out of the car. He then searched the front passenger area, where he found "a baggie containing marijuana in plain view on the front floor board and a recently smoked water pipe under the front seat." 76 Or App at 717. Continuing his search, he opened a closed grocery bag on the rear seat, where he found an additional seven and one-half ounces of marijuana. He then arrested the defendant.

We held that, under ORS 133.072,[4] "[t]he [officer's]

---

when on the highway, no matter how warm or how small the amount. The fact that Umenhofer does not always write a ticket when he finds minimal evidence of an open container violation does not mean that he lacks authority to do so.

Even defendant does not contend that he did not violate the open container law. His primary contention is that Umenhofer could not conduct a search incident to arrest, because he was investigating an infraction, as opposed to an arrestable offense. The dissent injects a question of fact that simply is not before us.

[4] ORS 133.072 provides:

"(1) When a person has committed a violation as defined in ORS 161.565 in the presence of a peace officer, the officer may issue and serve a citation to the person as provided in ORS 133.055 and 133.065.

"(2) The peace officer may stop and detain a person for a violation offense for the purposes of investigation reasonably related to the violation offense, identification of the person and issuance of a citation to the person.

"(3) A peace officer may detain a person pursuant to this section only for such time as it is reasonably necessary to investigate and verify the person's identity."

Possession of less than one ounce of marijuana is defined as a "violation." ORS 475.992(4)(f).

actions, including his discovery of the baggie of marijuana *and the water pipe,* were logically justified as an investigation reasonably related to the offense." 76 Or App at 718. (Emphasis supplied.) However, we determined that the officer's search of the closed grocery bag exceeded what was reasonably necessary to investigate the violation of possessing less than one ounce of marijuana. That full custodial search, we reasoned, could only be justified by the existence of probable cause that an arrestable offense had been committed. Because "possession of less than one ounce of marijuana does not itself create probable cause to search for more," we held that the search of the bag was unlawful. 76 Or App at 721.

Notwithstanding the argument of the dissent, nothing in *Tallman* stands for the proposition that, once an officer has discovered evidence of an infraction, he is prohibited from looking for additional evidence of the same offense.[5] On the contrary, the officer in that case, already having found a baggie of marijuana on the front floor board, was justified in looking under the front seat, where he found the water pipe. Similarly, Umenhofer could lawfully look in and under the seats for additional open containers. Unlike in *Tallman,* however, during the course of Umenhofer's lawful investigation, he found the mirror with residue on it. Because that evidence gave him probable cause to believe that a crime had been committed, his subsequent search of the closed glove compartment was lawful.[6]

Affirmed.

**BUTTLER, P. J.,** dissenting.

The majority has reached the wrong result, because it fails to face up to the holdings in *State v. Jackson,* 296 Or 430,

---

[5] Under the dissent's view, the officer in *Tallman* should have discontinued his search after finding the marijuana on the front floor board because that was sufficient evidence to establish that a violation had occurred. We held in *Tallman,* however, that the officer's actions in searching under the car seat after finding the baggie of marijuana "were logically justified as an investigation reasonably related to the offense." *State v. Tallman, supra,* 76 Or at 718.

*State v. Baldwin,* 76 Or App 723, 712 P2d 120 (1985), *rev den* 301 Or 193 (1986), does not address the issue of an officer's statutory authority to conduct an investigation reasonably related to a violation offense or traffic infraction.

[6] Defendant also argues that we should remand the case, because the trial court made no findings of fact. Because the facts relevant to resolving defendant's arguments are not in dispute, however, remand is unnecessary. *See generally, State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053, *rev den* (1974).

677 P2d 21 (1984), *State v. Tallman,* 76 Or App 715, 712 P2d 116 (1985), and *State v. Baldwin,* 76 Or App 723, 712 P2d 120 (1985), *rev den* 301 Or 193 (1986), and also because it misunderstands the record in this case.

Under the law as enunciated in *State v. Jackson, supra,* if the officer's observation of the beer can made it "immediately apparent" that a violation of law had occurred, 296 Or at 439, there might be circumstances permitting a further search. If the officer's observation did not make it "immediately apparent" that a violation of law had occurred, the officer may not search at all. The record in *Jackson* was capable of different interpretations whether an open container violation was "immediately apparent," because:

"There was a direct conflict in the evidence as to the location and position of the beer cans when the officer observed them from his place outside the vehicle. The officer testified that they were on the floorboard about six inches or so behind the defendant and front seat passenger and that the cans were upright. He testified that at that point he asked the passenger to get out so he could look at the cans. He testified that at that time he formed a belief that the open container law had been violated. He testified that when the passenger got out defendant reached over and tipped over the cans, spilling the contents on the floor. On cross-examination, the officer's testimony was somewhat different. He conceded that from outside the vehicle he could see the cans were open but that they could have been empty. He did testify that in his experience if the cans are empty they are lying flat. He also testified that 'those beer cans were sitting down between the seats.'

"Defendant's testimony in this particular was diametrically opposed. He testified that one cannot even see from the place where the officer looked into the vehicle the area where the officer contended the cans were. Defendant further swore that there were beer cans two to three feet behind the driver's seat in the cargo portion of the vehicle and that cans had spilled out of a sack but that they were empty and not sitting up." 296 Or at 440 n 5.

Because the trial court had not made findings of fact to support a conclusion that a violation of law was "immediately apparent," the court remanded the case to the trial court to make findings on that point. It is apparent from the remand instructions that, unless the trial court concluded, on the basis

of its findings, that a violation was "immediately apparent," no search or seizure was justified. It is also apparent that, if the trial court found that the open beer cans were lying flat on the floorboard, no "immediately apparent" violation of law would have existed.

Here, taking the officer's testimony as true, he observed an open beer can lying on its side on the floor boards in back of the driver's seat. Even *assuming*, contrary to *Jackson*, that that observation made it "immediately apparent" that defendant had violated the open container law, he would have been authorized to seize that beer can, which he did. He testified that he turned the can upside down and that there was a "small amount of beer in the bottom"; "some came out." The can was not cold and there was absolutely no indication that defendant had consumed any alcoholic beverage or had made any furtive motions as if to place the can on the floorboard. The officer testified that he usually did not write a ticket when that was the only evidence he had.

In the trial court, the state relied on the search as being incident to defendant's arrest on the fugitive arrest warrants and on *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), the so-called automobile exception to the warrant requirement. The trial court apparently accepted those arguments, because it denied defendant's motion to suppress, without making any findings of fact or comments. On appeal, the state concedes that neither of those justifications to search is applicable.

Instead, relying, strangely, on *State v. Jackson, supra,* it contends that, having found evidence of a violation of the open container law, the officer was entitled to search for more. However, the record does not support findings that would support a conclusion that the officer's observation made it "immediately apparent" that a violation of law had occurred. Accordingly, *Jackson* holds that he had no authority to seize the beer can that he did see. But even if he did, whatever probable cause he might have had to believe that defendant had violated the law dissipated. ORS 811.170 prohibits the keeping in a motor vehicle when the vehicle is on the highway, a can containing any alcoholic liquor, which has been opened, or seal broken, or the contents of which have been partially removed. Here, the contents of the can, to all intents and

purposes, had been completely removed, and for that reason the officer did not cite defendant for that violation.

Because the officer's assumed probable cause to believe that defendant had violated the law had dissipated, he lacked probable cause to search the car further.

Even if we ignore *State v. Jackson, supra,* the majority's conclusion is directly opposed by *State v. Tallman, supra,* and *State v. Baldwin, supra.* In *Tallman,* as an officer approached the defendant's stopped automobile, the defendant and his passenger were reaching down to the floor as if they were attempting to "stash something in the car." Because he noticed a strong odor of incense and of burnt marijuana, he asked the occupants to step out of the car. He then searched the front passenger area, discovering a baggie containing less than one ounce of marijuana in plain view on the front floor board and a recently smoked water pipe in the same area, under the front seat. After making that discovery, he continued to search through several grocery bags on the rear seat, finding more marijuana.

We affirmed the trial court's order suppressing evidence seized from the grocery bags. We pointed out that possession of less than one ounce of marijuana is a "violation" rather than a crime, for which defendant could not have been arrested. We held that, pursuant to ORS 133.072(2), which is virtually identical to ORS 810.410(3) and permits an officer to detain a person for a violation offense for the purposes of investigation reasonably related to the violation offense, identification of the person and issuance of a citation, the officer is not authorized to search further for evidence of that violation. Once the officer had found the baggie and the water pipe, the search for which was logically justified as an investigation reasonably related to the offense, no further search was authorized.

Although the majority discusses *State v. Tallman, supra,* it contends that defendant ignores ORS 810.410. To the contrary, the majority ignores the fact that that statute is virtually identical to ORS 133.072(2), which is applicable to violation offenses on which we relied in *Tallman* in reaching our conclusion.

In *State v. Baldwin, supra,* we held that, after the

officer had stopped the defendant on a reasonable suspicion of possession of marijuana, he lacked authority to search further after he found a baggie containing less than an ounce of marijuana, a violation offense.

Because the majority's holding is contrary to *State v. Jackson, supra, State v. Tallman, supra,* and *State v. Baldwin, supra,* I dissent.