Argued and submitted January 22, the decision of the Court of Appeals and judgment of the circuit court reversed and case remanded to circuit court for a new trial September 19, 1991

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# CHARLES LESLIE PORTER,
*Petitioner on Review.*

## (CC 10-88-08835; CA A51130; SC S37485)

817 P2d 1306

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender, Salem.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

## GRABER, J.

The issue in this criminal case is whether, after discovering and seizing evidence of an open container violation[1] — an open can containing beer — an officer lawfully searched defendant's car for additional open containers. We hold that the search was unlawful and that the trial court should have suppressed evidence that resulted from it. Accordingly, we reverse the decision of the Court of Appeals, which affirmed the judgment of the trial court. *State v. Porter,* 102 Or App 22, 792 P2d 471 (1990).

The trial court made no findings of fact when it ruled on the motion to suppress evidence. For the purpose of his petition for review, however, defendant agrees that the Court of Appeals stated the facts correctly.

On September 29, 1988, a police officer noticed defendant, because he was driving a car like the officer's. When the officer caught his eye, defendant looked away furtively. That aroused the officer's suspicion. He ran a records check and discovered that there was an arrest warrant outstanding for the car's registered owner. Because defendant matched the description of the registered owner, the officer stopped the car. After confirming that defendant was the registered owner of the car and was wanted on a Nevada fugitive warrant, the officer arrested defendant and placed him in the back seat of the patrol car.

During the stop, the officer had noticed an open beer can behind the driver's seat, so he returned to defendant's car. He picked up the beer can and determined that it contained some beer. He saw no evidence of a crime. He then searched the car for more open beer cans; that is the search at

---

[1] ORS 811.170 provides in part:

"(1) A person commits the offense of violation of the open container law in a motor vehicle if the person does any of the following:

"* * * * *

"(c) Keeps in a motor vehicle when the vehicle is upon any highway, any bottle, can, or other receptacle containing any alcoholic liquor, which has been opened, or a seal broken, or the contents of which have been partially removed. * * *

"* * * * *

"(3) The offense described in this section, violation of the open container law in a motor vehicle, is a Class B traffic infraction."

issue. Under the front seat, the officer found a mirror covered with razor marks. He then looked inside a closed box between the front bucket seats. There, he found four baggies containing methamphetamine and a "cut down" straw with white residue on it.

Defendant was indicted for possession of a controlled substance, ORS 475.992. Before trial, he moved to suppress the methamphetamine, mirror, and straw, arguing that the officer found and seized them during an unlawful search. The state contended that the search was lawful under the automobile exception to the warrant requirement.[2] The trial court denied the motion. Defendant was convicted, and he appealed.

■ To the Court of Appeals, the state made a new argument. It contended that the officer was entitled to search for additional open containers under ORS 810.410(3)(b), which permits an "investigation reasonably related to [a] traffic infraction." The Court of Appeals affirmed on that ground, reasoning that the officer saw the open beer can in plain view during the course of a lawful stop. "That discovery justified an investigation 'reasonably related to the traffic infraction' regarding open containers." *State v. Porter, supra,* 102 Or App at 25. The court also concluded that, when the officer found the razor-scratched mirror, he had probable cause to believe that a crime had been committed, justifying his search of the closed box. *Id.* at 27. We allowed defendant's petition for review.[3]

■ Defendant does not challenge the validity of the stop or of his arrest on the fugitive warrant, nor does he contend that the officer's seizure of the open beer can was unlawful.[4]

---

[2] The state did not attempt to justify the search as incident to an arrest for the open container violation. The state conceded that the search was not related to defendant's arrest on the fugitive warrant. The state also conceded that the "inevitable discovery" doctrine did not apply, because defendant's car was picked up by his friends, and the police did not tow or inventory it.

[3] Defendant did not present to the trial court the argument that the search was not permitted by ORS 810.410(3)(b). We address the issue nonetheless, because the Court of Appeals considered and decided it. *See* ORAP 9.20(2) (Supreme Court may consider issues that were before the Court of Appeals); *State v. Lutz,* 306 Or 499, 502, 760 P2d 249 (1988) (Supreme Court may address merits of an issue of law that Court of Appeals considered and decided, even if not raised or preserved in trial court).

[4] The dissent in the Court of Appeals argued that this case is controlled by *State v. Jackson,* 296 Or 430, 677 P2d 21 (1984):

Rather, he argues that, under ORS 810.410(3), the officer could not lawfully search for additional open containers after having found one open container and nothing more. In the alternative, he argues, if the statute permits the search, then the statute violates Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[5]

■     We begin our analysis with the statute, ORS 810.410, which provides in part:

"(2)   A police officer may issue a citation to a person for a traffic infraction * * * when the traffic infraction is committed in the police officer's presence.

"(3)   A police officer:

"(a)   Shall not arrest a person for a traffic infraction.

"(b)   *May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction,* identification and issuance of citation." (Emphasis added.)

The key provision, subsection (3)(b), is not self-explanatory. Therefore, we consult the legislative history of the statute to

---

"Under the law as enunciated in *State v. Jackson, supra,* if the officer's observation of the beer can made it 'immediately apparent' that a violation of law had occurred, 296 Or at 439, there might be circumstances permitting a further search. If the officer's observation did not make it 'immediately apparent' that a violation of law had occurred, the officer may not search at all." *State v. Porter, supra,* 102 Or App at 28 (Buttler, P. J., dissenting).

*Jackson* is not controlling, however, because defendant does not challenge the original observation or seizure of the beer can. *Jackson* does not answer the questions that defendant raises here.

[5] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

determine legislative intent. *Mattiza v. Foster,* 311 Or 1, 4, 803 P2d 723 (1991).

ORS 810.410 was enacted in 1981, Or Laws 1981, ch 818, in part as a response to this court's decision in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977). In *Brown,* this court wrote:

> "[I]t bears on the constitutional distinction between a civil case and a 'criminal prosecution' that the Oregon Vehicle Code retains many of the pre-trial practices used in the enforcement of criminal laws. It is by now well understood that this process encompasses the stages before charge, plea, and trial as well as the trial itself. The statutes place major traffic offenses with felonies and misdemeanors in the law of arrest. ORS 133.310. A person thus arrested faces the possible use of physical restraints, such as handcuffs, a search of the person, * * *. Of course a traffic offender must be subject to being stopped, compare ORS 131.605-131.615, and in the case of apparent intoxication prevented from resuming his driving. *Often that could be accomplished by other means. But detention beyond the needs of identifying, citing, and protecting the individual or 'grounding' him, especially detention for trial unless bail is made, comports with criminal rather than with civil procedure and is surely so perceived by the public.*[16]

> "[16] * * * We feel safe in assuming that it is more important to the legislative scheme of the Oregon Vehicle Code to decriminalize traffic infractions than to retain the incompatible aspects of 'full custody' detention for those offenses that otherwise are effectively decriminalized." 280 Or at 108 (emphasis added).

The proposed statute was submitted to the 1981 Legislative Assembly as Senate Bill 55, at the request of the Special Courts Committee of the Oregon Judicial Conference. Doug Bray of the Special Courts Committee explained SB 55 to the House Judiciary Committee:

> "The 1975 Legislature enacted a major reorganization of the structure of traffic offenses. The legislature established a distinction between traffic offenses which it deemed serious enough to carry criminal penalties and those which should not. These latter offenses were defined as traffic infractions. The distinguishing features of the traffic infraction were the absence of incarceration as a possible penalty and the

removal of the protections extended to individuals prosecuted for criminal offenses.

"These changes to the motor vehicle code enacted from Senate Bill 1 became effective on July 1, 1976. On August 1, 1976 Mr. Hugh Duffy Brown was cited into Multnomah County District Court for the Class A traffic infraction of driving while under the influence of intoxicants. The Oregon Supreme Court, on October 12, 1977, issued its opinion in *Hugh Duffy Brown v. Multnomah County District Court,* 280 Or 95, 570 P2d 52 [1977]. The court concluded in *Brown* that the criminal law enforcement procedures retained by the legislature for infraction enforcement contained too many penal characteristics not to be a criminal prosecution under Article I, section 11 of Oregon's constitution. While the Supreme Court restricted its ruling in *Brown* to the particular offense before it, a close reading of *Brown* left no doubt that many of the penal characteristics that troubled the Supreme Court in its analysis of the Class A traffic infraction of driving while under the influence of intoxicants applied equally to the enforcement procedures for all traffic infractions and would lead to the same result if a similar analysis were applied. This analysis was reinforced clearly in a March, 1981 opinion of the Oregon Supreme Court. Justice Tongue writing for the majority in *Easton v. Hurita,* 290 Or 689, [625] P2d [1290] [1981], states that infraction procedures which retain the power of full custodial arrest are not decriminalized sufficiently to withhold constitutional protections (at 697). *Easton* involved a suit for false arrest and did not require the court to rule directly on the constitutionality of the arrest authority.[6] There can be little doubt following *Easton* about how the court will rule if the issue does arise.

"The purpose of Senate Bill 55 is to establish effective law enforcement procedures for traffic infractions that can be distinguished from criminal law enforcement procedures and at the same time retain authority for police officers to stop, investigate, identify, and cite motorists for traffic infractions." Exhibit A, House Committee on the Judiciary, Subcommittee 2 (July 2, 1981 — testimony of Doug Bray, Special Courts Committee).

---

[6] In *Easton v. Hurita,* 290 Or 689, 697, 625 P2d 1290 (1981), this court held that, "although police officers have authority to *arrest* a person for a minor traffic infraction, their authority to put in jail a person arrested for such an offense is not without limits. * * * [D]etention beyond the minimum necessary for identification and citation must be supported by further grounds * * *." (Emphasis in original.)

*See also* Minutes, Senate Committee on Justice, May 13, 1981, p 11 (Doug Bray provided similar explanation of the purpose of SB 55 in testimony to Senate Committee); Minutes, Senate Committee on Justice, May 13, 1981, p 10 (Chair Wyers stated that SB 55 protects against the possibility of violating the *Brown* decision); Exhibit M, Senate Committee on Justice, May 13, 1981 (Philip T. Abraham, Chair, Special Courts Committee, testified that the purpose of Senate Bill 55 is to establish law enforcement procedures for traffic infractions that can be distinguished from criminal enforcement in the light of *Brown*).

The purpose of SB 55 was explained similarly in floor debates of both the Senate and the House. For example, Senator Gardner, sponsor of SB 55, stated that the bill was intended to comply with *Brown v. Multnomah County Dist. Ct., supra,* by establishing procedures for traffic infractions that can be distinguished from criminal law enforcement procedures. Tape Recording, Third Reading to the Senate, June 1, 1981, Tape 97B. *See also* Tape Recording, Third Reading to the House, July 29, 1981, Tape 35, Track II (containing similar statement).

Subsection (3) of SB 55 (now ORS 810.410(3)) defined the parameters of police authority to stop and detain motorists for traffic infractions:

"Subsection (3) defines the police officer's authority to stop and detain an individual on a traffic infraction. This section is the heart of the police officer's authority to enforce most of the traffic laws of the state. Subsection (3) gives the officer authority to stop an individual for the purposes of investigation into *the* infraction, to identify the individual operating the motor vehicle (remember that Section 9 of this bill makes it criminal for the driver to refuse or to give false identification) and to issue the individual a citation if an offense was committed." Exhibit M, Senate Committee on Justice, May 31, 1981 (emphasis added).

From that history, we glean that the legislature sought to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. The legislature intended to satisfy the concerns expressed in *Brown v. Multnomah County Dist. Ct., supra,* and thus to permit only minimal

intrusions on Oregon drivers stopped for traffic infractions. The words of ORS 810.410(3)(b) reflect that intent by requiring that any investigation be "reasonably related to the traffic infraction, identification and issuance of citation." ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction. A search that explores for evidence of other crimes or infractions is not "reasonably related to *the* traffic infraction, identification and issuance of citation." ORS 810.410(3)(b) (emphasis added).

In this case, the officer was investigating an open container violation committed in his presence. He suspected no crime (other than the one for which defendant had been arrested on the fugitive warrant). At the suppression hearing, the officer testified that the *only* reason that he continued to search after finding an open can containing beer was "[t]o see if in fact there was * * * a can that had more contents in it." ORS 811.170(1)(c) makes it a violation to carry any open container containing "*any* alcoholic liquor," while in a motor vehicle on a highway. (Emphasis added.) No statute provides that possession of a greater quantity of alcohol in open containers is a more serious offense. In addition, whether defendant carried one or ten open containers was irrelevant to "*the* traffic infraction" committed in the officer's presence.[7] ORS 810.410(3)(b) (emphasis added). When the officer found and seized from defendant's car the open can containing beer, he had all the evidence that he needed to cite defendant for violating the open container law. ORS 810.410(3)(b) instructed him to investigate no further.

■ This is not a case in which, while acting within the scope of the statute permitting investigation of the traffic infraction, the officer observed something that gave him probable cause to investigate a crime (when, of course, the warrant requirement still must be observed or excused). Had

---

[7] The number of open containers containing alcohol could be relevant to some other offense, such as driving while under the influence of intoxicants, ORS 813.010 (DUII). The officer testified, however, that defendant did not show any signs of intoxication. The officer did not contend that he was searching for evidence that defendant was driving under the influence of intoxicants.

the officer observed evidence of a crime in plain view, ORS 810.410(3)(b) would not apply to an ensuing search; the officer's authority in those circumstances would derive from other sources. *See State v. Brown,* 301 Or 268, 276, 721 P2d 120 (1985) (describing "automobile exception" to warrant requirement when police have probable cause to believe that a mobile vehicle, stopped by police, contains evidence of a crime). When the officer seized the open beer can in this instance, he did not observe any evidence of a crime in plain view. It was only after he undertook a separate search that anything else came to light. Under ORS 810.410(3)(b), he was not permitted to have undertaken that separate search.

■ We hold that the search in this case exceeded the scope of investigation permitted by ORS 810.410(3) and that there was no other lawful basis for the search. The trial court should have suppressed the evidence obtained in violation of ORS 810.410(3),[8] because the object of that statute is to define the authority of officers to respond to a traffic infraction. *See State v. Davis,* 295 Or 227, 236, 666 P2d 802 (1983) ("when the object of the statute is to define the authority of officers to seize or to search a person or property, * * * the court * * * has given effect to the statute by denying the state the use of evidence that it would not have secured if its officer had respected the rights that the statute was designed to protect").

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.

---

[8] We need not reach defendant's argument that ORS 810.410(3) is unconstitutional.