302                October 3, 2013                No. 48

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Relat*or,

*v.*

LAURIE ANN BENOIT,
*Defendant-Adverse Party.*

(CC 111051946; SC S060858)

En Banc

On alternative writ of mandamus order dated January 29, 2013.*

Argued and submitted June 5, 2013.

Jeremy Rice, Assistant Attorney General, Salem, argued the cause for relator State of Oregon. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Cody Hoesly, Larkins Vacura LLP, Portland, Cooperating Attorney for *amicus curiae* ACLU Foundation of Oregon, Inc., argued the cause for adverse party. With him on the *amicus* brief was Kevin Diaz, Legal Director, ACLU Foundation of Oregon, Inc. Bruce Tarbox, Bruce Tarbox PC, Oregon City, attorney for adverse party joined this brief.

Bronson James, Portland, filed a brief on behalf of *amicus curiae,* Oregon Criminal Defense Lawyers Association.

BREWER, J.

The petition for writ of mandamus is dismissed.

_____
* On petition for alternative writ of mandamus from an order of Multnomah County Circuit Court, Cheryl Albrecht, Judge.

**BREWER, J.**

The right to a jury trial under Article I, section 11, of the Oregon Constitution, extends to "all criminal prosecutions."[1] The issue in this mandamus proceeding is whether the state's election under ORS 161.566(1)[2] to "treat" the misdemeanor offense of criminal trespass as a violation effectively decriminalized that offense and thereby deprived defendant of the jury trial right afforded her under Article I, section 11.[3]

On October 11, 2011, defendant was arrested, handcuffed, booked, and lodged in jail along with other 49 other "Occupy Portland" protesters. She was then charged with second-degree criminal trespass, a Class C misdemeanor. *See* ORS 164.243 (so providing). At defendant's arraignment, the state elected to treat that charge as a violation pursuant to ORS 161.566(1). Under ORS 153.076, violation proceedings must be tried to the court, and certain other protections for criminal defendants are unavailable.[4] After the state made its election, defendant filed a motion for a trial by jury. Relying on the Court of Appeals' recent decision in *State v. Fuller*, 252 Or App 391, 287 P3d 1263 (2012) (holding that

---

[1] Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed[.]"

[2] The 2009 version of ORS 161.566 was in effect when defendant allegedly committed her offense. However, because the 2011 version of the statute is identical in most material respects to the 2009 version, for convenience, we refer to the current version of the statute in this opinion unless otherwise indicated. We set out relevant text of ORS 161.566 later in this opinion.

[3] Defendant has not appeared in this mandamus proceeding. However, *amici* ACLU Foundation of Oregon, Inc., and the Oregon Criminal Defense Lawyers Association have filed briefs on the merits in support of her position. In addition, counsel for *amicus* ACLU Foundation of Oregon, Inc., was granted permission to argue the cause in support of defendant's position.

[4] ORS 153.076 provides, in part:

"(1) Violation proceedings shall be tried to the court sitting without jury. ***.

"(2) The state, municipality or political subdivision shall have the burden of proving the charged violation by a preponderance of the evidence.

"*****

"(5) Defense counsel shall not be provided at public expense in any proceeding in which only violations are charged."

the defendant was entitled to a jury trial on charges of third-degree theft, notwithstanding the prosecutor's election to treat the offense as a violation), the trial court concluded that the violation charge against defendant qualified as a criminal prosecution under Article I, section 11. The trial court therefore granted defendant's motion for trial by jury, and the state filed a petition for a writ of mandamus in this court on that issue. For the reasons explained below, we agree with the trial court that defendant is entitled to a jury trial on the violation charge, although our reasoning differs in some respects from that of the Court of Appeals in *Fuller* and the trial court here. Accordingly, we dismiss the state's petition.

For various reasons, including budgetary constraints, legislatures around the country have relatively recently begun to treat certain offenses as violations. In Oregon, the legislature created an offense classification for violations in 1971, as part of a general revision to the criminal code. Or Laws 1971, ch 743, § 65; ORS 161.505 ("offense" is either a "crime" or a "violation"). Under that new classification, a violation was punishable by only a fine, forfeiture, or other civil penalty, and offenses that were either specifically designated as such or were punishable by only fines, forfeitures, or other civil penalties were to be considered violations. Or Laws 1971, ch 743, § 71. In 1987, the legislature enacted a statute giving trial courts the option to treat any misdemeanor charge except a misdemeanor created under the Oregon Vehicle Code as a violation if, before the defendant entered a plea to the charge, the court declared that it intended to do so and the state did not object. *Former* ORS 161.565(2) (1987). In 1989, the legislature altered the statutory scheme to provide that *all* misdemeanor charges would proceed as violations unless, before the defendant entered a plea to the charge, the district attorney declared on the record that the case would proceed as a misdemeanor. *Former* ORS 161.565(2) (1989). Finally, in 1999, the legislature repealed *former* ORS 161.565 and replaced it with ORS 161.566, which remains in effect today. Or Laws 1999, ch 1051, §§ 47, 49. In doing so, the legislature established a scheme in which misdemeanors now are tried as crimes rather than as violations, unless the state elects otherwise.

Under ORS 161.566(1), subject to exceptions not pertinent here, "a prosecuting attorney may elect to treat any misdemeanor as a Class A violation."[5] The state merely needs to make that election by the time of the defendant's first appearance. The violation is then prosecuted without a jury or appointed counsel, the standard of proof is by a preponderance of the evidence, and various other rights of criminal defendants are eliminated. *See* ORS 153.076(1), (2), and (5) (setting out procedures for trial of violations). Thus, defendants in violation proceedings lose certain procedural safeguards against the risk of erroneous conviction. However, when a misdemeanor is treated as a violation, a conviction cannot lead to incarceration. *See* ORS 153.090 (setting out possible contents of judgments in violation proceedings).

The question in this mandamus proceeding is whether, notwithstanding the prosecutor's election to treat the misdemeanor offense of second-degree criminal trespass as a violation, defendant was entitled to a jury trial in this case. As an initial matter, we observe that, as a result of the prosecutor's election, defendant is not entitled to a jury trial under any statute. Although ORS 136.001(1) provides that defendants in "criminal" prosecutions "have the right to public trial by an impartial jury," ORS 153.030(1) specifies that "[t]he procedures provided for in [ORS chapter 153] apply" to the prosecution of all violations described in ORS 153.008. ORS chapter 153, as we have noted, eliminates trial by jury and certain other rights of criminal defendants in violation proceedings, and ORS 153.008(1)(d), in turn, defines covered violations to include cases in which the prosecuting attorney has elected to treat an offense as a violation under ORS 161.566. Thus, notwithstanding that defendant initially was arrested for and charged with committing a misdemeanor offense, the prosecutor's election to treat that offense as a violation means that, under the applicable statutes, defendant is not entitled to a jury trial.

---

[5] ORS 161.566(1) provides:

"(1) Except as provided in subsection (4) of this section, a prosecuting attorney may elect to treat any misdemeanor as a Class A violation. The election must be made by the prosecuting attorney orally at the time of the first appearance of the defendant or in writing filed on or before the time scheduled for the first appearance of the defendant. If no election is made within the time allowed, the case shall proceed as a misdemeanor."

ORS 153.005(4) does not compel a different conclusion. That provision defines a "violation proceeding" as a proceeding initiated "by issuance of a citation," which a "reduced" misdemeanor prosecution is not. As explained above, however, ORS 153.030 declares that the procedures set out in chapter 153 apply to all violations, including violations reduced from misdemeanors pursuant to ORS 161.566. That is, ORS 153.030 expressly incorporates all procedures from chapter 153—including those found in ORS 153.076—into proceedings that involve "reduced" misdemeanors. Thus, ORS 153.030 requires the application of ORS 153.076 in this case.

We turn, then, to consider whether the Oregon Constitution permits defendant to be deprived of a jury trial in this case. As noted, Article I, section 11, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed." Under Article I, section 11, whether a proceeding is a "criminal prosecution" is key to determining whether a jury trial and the other protections that Article I, section 11, affords defendants are required.

This court addressed the issue of what constitutes a "criminal prosecution" for purposes of the jury trial right in Article I, section 11, in *Brown v. Multnomah County Dist. Court*, 280 Or 95, 570 P2d 52 (1977). In that case, the defendant had been charged with a first offense of driving under the influence of intoxicants (DUII), which the legislature had designated as a "traffic infraction" rather than a "traffic crime." Under then-applicable statutes, defendants being tried for traffic infractions did not, among other things, have the right to appointed counsel, the right to a jury trial, or the right to have the charged offense proved beyond a reasonable doubt. The issue before the court in *Brown* was whether, despite the legislature's effort to decriminalize a first DUII offense, that offense nonetheless remained a "criminal prosecution" for purposes of Article I, section 11. If so, then the offense could not be tried without the constitutional safeguards guaranteed to defendants in criminal prosecutions.

In deciding the issue, the court began by observing that there is no easy test for determining whether a proceeding to impose a sanction is a "criminal prosecution" within the meaning of Article I, section 11. The court stated that the legislature's treatment of conduct as a criminal offense is sufficient to establish that it is a criminal offense for constitutional purposes, but the converse is not true:

> "[I]t does not follow that a law can avoid [the attachment of constitutional consequences] simply by avoiding the term 'criminal' in defining the conduct to be penalized."

*Brown*, 280 Or at 102. Then, from a review of useful law review articles, the court developed a list of factors that have been used to determine whether an ostensibly civil penalty proceeding remains a "criminal prosecution" for constitutional purposes.[6]

The factors that the court identified are (1) the type of offense, including, for example, whether the offense was a crime at common law, or whether it involves traditional elements of *mens rea* or a lower degree of culpability; (2) the penalty incurred, and, specifically, whether there is the potential for imprisonment or a heavy fine; (3) collateral consequences, such as, in *Brown*, the revocation or suspension of a driver license; (4) punitive significance of the prosecution, that is, whether a judgment is stigmatizing and condemnatory; and (5) the role, if any, of pretrial arrest and detention. *Id*. at 102-09. The court stated, further, that "[a]ll [those factors] are relevant, but none is conclusive" in reaching the "ultimate determination" whether a proceeding is a "criminal prosecution" for constitutional purposes. *Id*. at 102. After considering those factors, the court in *Brown* concluded that the first DUII offense retained "too many penal characteristics" not to be a criminal prosecution for purposes of Article I, section 11. *Id*. at 109-11.

---

[6] We note that the court in *Brown* did not purport to derive those factors from the text or context of Article I, section 11, itself. *Brown* was decided before this court established its methodology for interpreting original constitutional provisions such as Article I, section 11, in *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). Under *Priest*, to determine the meaning of a constitutional provision, the court examines the constitutional text in its context, then the historical circumstances of the adoption of the provision, and, finally, the case law construing it. Neither party has asked us to reconsider *Brown*; accordingly, we continue to apply the *Brown* factors in evaluating whether a proceeding is a "criminal prosecution" for purposes of Article I, section 11.

The state urges that the second factor that the court identified in *Brown*—the potential penalty arising from a conviction—is paramount and that it is dispositive in this case. The state argues that this court has long recognized that Article I, section 11, does not apply to "petty," noncriminal offenses. *See*, *e.g.*, *Wong v. City of Astoria*, 13 Or 538, 545, 11 P 295 (1886) (enforcement of a penalty—a fine—for violating a city ordinance against licentiousness is not a criminal prosecution, and the constitution does not require jury trial); *Cranor v. City of Albany*, 43 Or 144, 148, 71 P 1042 (1903) (constitutional right to jury trial "generally regarded as having no application to the prosecution of minor and trivial offenses before justices and police magistrates, as such offenses were summarily punished at common law"). The state asserts that this court in *Brown* emphasized that the potential penalty arising from a conviction is "the single most important criterion" for assessing whether a jury trial is required, and that the other factors are less important. 280 Or at 103. That is so, the state contends, because a criminal prosecution is, at its core, merely a "proceeding to impose a criminal punishment," *State v. Selness*, 334 Or 515, 535, 54 P3d 1025 (2002), and the purpose of the jury trial right is to prevent the unjust imposition of such a punishment, *Apodaca v. Oregon*, 406 US 404, 410, 92 S Ct 1628, 32 L Ed 2d 184 (1972). Thus, according to the state, when a proceeding presents no risk of incarceration or a severe financial penalty, the constitutional jury trial right is not implicated. The state acknowledges that the other *Brown* factors might carry some weight in a particular case, but, it argues, a proceeding that does not present any possibility of a criminal penalty is presumptively noncriminal.

In this case, the state observes, defendant could not be incarcerated on a violation conviction for second-degree criminal trespass,[7] and the maximum fine that the trial court could impose for a violation conviction of that offense is $1,250. ORS 161.566(2) (2009) (fine may not exceed the amount provided in ORS 161.635);[8] ORS 161.635 (maximum

---

[7] A person convicted of a Class C misdemeanor, by contrast, is subject to a possible term of imprisonment of 30 days. ORS 161.615.

[8] ORS 161.566(2) (2009) was amended in 2011 to establish a minimum fine for a violation conviction, Or Laws 2011, ch 597, § 16, and again in 2012 to effectively

fine for Class C misdemeanor is $1,250). The state notes that the court stated in *Brown* that "a large fine may be as severe, in practical terms, as a short imprisonment, and so strikingly severe as to carry the same punitive significance." 280 Or at 104. But, in this case, the state contends, a fine of $1,250 is not shocking or disproportionate, nor is it so severe as to approximate the loss of liberty created by imprisonment. Therefore, the state argues, application of the "penalty" factor establishes that a jury trial was not constitutionally required in this case.

The state also argues that none of the other *Brown* factors dictate a different result. The state asserts that the "type of offense" charged here is noncriminal, in light of the fact that the prosecution elected to decriminalize the charge against defendant under ORS 161.566 (factor 1). The state also observes that no collateral consequences will result from a conviction (factor 3). In addition, the state urges, the fact that the legislature chose to punish the offense of second-degree criminal trespass as a misdemeanor subject to only a small fine and a brief term of incarceration means that the punitive significance of a conviction for that offense is minimal to begin with, and any stigma attaching to such a conviction was effectively eliminated in this case when the prosecutor elected to reduce the charge under ORS 161.566 (factor 4). Finally, according to the state, the pretrial procedures to which defendant was subjected did not suggest a criminal proceeding (factor 5). The state acknowledges that defendant was arrested prior to her arraignment, but it argues that the decriminalization that occurred thereafter superseded what happened to defendant before the arraignment. That is, according to the state, because defendant could not be arrested, even for failure to appear, once the charge against her was reduced to a violation, and because failure to appear on a violation is not a crime (unlike failure to appear on a misdemeanor or felony), the fact that defendant was arrested, booked, and incarcerated before the charge was reduced does not rebut the presumption that the violation prosecution is a noncriminal proceeding.

---

raise the maximum fine for a conviction of a Class C misdemeanor receiving violation treatment. Or Laws 2012, ch 82, § 2.

*Amicus* ACLU Foundation of Oregon, Inc. disputes most of those contentions. For example, *amicus* observes that the fine structure for a reduced misdemeanor offense under ORS 161.655 (2009) remained the same as for other misdemeanor offenses, thereby indicating that the legislature intended to impose criminal-type financial sanctions for such offenses.[9] With respect to the type of offense, *amicus* argues that trespass is a criminal offense because (1) it has a *mens rea* element; *see City of Portland v. Tuttle*, 295 Or 524, 530-31, 668 P2d 1197 (1983) (ostensible "violation" was a crime, in part because it required proof of "[t]he culpable mental state of 'knowledge'"); (2) criminal trespass is a "brand" that "[is] colored by its past, and the idea that the peace of the community [is] put in danger by the trespasser's conduct;" *Martin v. Reynolds Metals Co.*, 221 Or 86, 99, 342 P2d 790 (1959), *cert den*, 362 US 918, 80 S Ct 672, 4 L Ed 2d 739 (1960); and (3) the scheme is not fully decriminalized, because trespass is a misdemeanor by default unless the prosecutor makes an election to reduce the charge. With respect to the punitive significance factor, *amicus* asserts that there is a "profound" stigma of the individual that marks a criminal trespass proceeding as criminal in nature in the constitutional sense. The only factor over which the state and *amicus* do not quarrel is whether criminal-type collateral consequences arise from a reduced misdemeanor. They agree that there are none.

With the contesting arguments so framed, we turn to the governing legal principles. As an initial matter, we think that the state misunderstands the *Brown* test when it argues that the prescribed penalty for an offense is the most important factor in determining whether a proceeding is a "criminal prosecution" for purposes of Article I, section 11. As discussed above, the court in *Brown* stated that "all [the factors] are relevant, but none is conclusive." 280 Or at 102. More importantly, however, this court in *Brown* did not state, or even suggest, that the *absence* of the possibility of imprisonment creates a presumption that a proceeding is

---

[9] The state notes that the legislature has since amended the statute to provide that, in reduced misdemeanor cases, the fine structure for violations, not misdemeanors, applies. ORS 161.566(2) (2011). However, the parties agree that that amendment is not applicable in this case.

noncriminal. Rather, in characterizing the potential penalty as the "single most import criterion," the court in *Brown* merely acknowledged that, where incarceration is an available penalty for an offense, the process leading to such a possible outcome necessarily is a criminal prosecution. In fact, this court had held as much on several occasions, in related contexts, before deciding *Brown*. For example, in *City of Portland v. Erickson*, 39 Or 1, 7-8, 62 P 753 (1900), the court held that, for former jeopardy purposes under Article I, section 12, of the Oregon Constitution, when "the court is empowered to inflict upon the accused not only a fine, which may be followed by imprisonment for its nonpayment, but also imprisonment aside from any pecuniary penalty or forfeiture ***," the proceeding is criminal in nature as far as constitutional requirements are concerned. *See also State v. Mayes*, 245 Or 179, 184, 421 P2d 385 (1966) (so describing holding in *Erickson*); *City of Salem v. Read*, 187 Or 437, 441, 211 P2d 481 (1949) (same).

But the converse is not true. As the court stated in *Brown*, "the absence of potential imprisonment does not conclusively prove a punishment non-criminal." 280 Or at 103. In that circumstance, other factors may play a more prominent role in determining whether a proceeding is a "criminal prosecution." Moreover, even though the court in *Brown* stated that none of the factors that it identified is "conclusive," as with the application of any multifactorial paradigm, some factors will point more clearly than others to a particular conclusion in the circumstances of a given case. That is the situation here. Although we could analyze at length the weight and import of the penalty and punitive significance factors in this case, our sampling of the parties' diametrically opposed yet generally plausible arguments about those factors demonstrates that the exercise would not be particularly helpful.

Instead, we conclude that, as applied to the particular circumstances of this case, the most significant factors are the type of offense with which defendant was charged and the fact that defendant was subjected to pretrial arrest and detention. With respect to the type of offense, even though the legislature has authorized a prosecutor to reduce the

crime of second-degree criminal trespass to a violation, the legislature nonetheless has declared that offense to be a crime. As this court observed in *Brown*, "[w]hen the legislature has defined conduct as a criminal offense, it is a criminal offense for constitutional purposes even if the same consequences could have been attached to the same conduct by civil or administrative proceedings." *Id.* at 102. The court in *Brown* also emphasized that the 1975 traffic code "did not free this offense from the punitive traits that characterize a criminal prosecution," in part, based on "the evident legislative desire to emphasize the seriousness of this offense while facilitating its punishment." *Id.* at 110. In turn, because the legislature defined the conduct as a criminal offense, the state was permitted to subject the defendant to uniquely criminal processes.

The court in *Brown* emphasized the significance of the possibility of arrest and detention in assessing whether a proceeding is a "criminal prosecution":

> "[I]t bears on the constitutional distinction between a civil case and a 'criminal prosecution' that the Oregon Vehicle Code retains many of the pre-trial practices used in the enforcement of criminal laws. It is by now well understood that this process encompasses the stages before charge, plea, and trial as well as the trial itself. The statutes place major traffic offenses with felonies and misdemeanors in the law of arrest. ORS 133.310. A person thus arrested faces the possible use of physical restraints, such as handcuffs, a search of the person, booking (including the taking of fingerprints or photographs), and detention in jail if not released by police officers, or at a later time by a magistrate. *See* ORS 484.435, ORS 484.100-484.140. Of course a traffic offender must be subject to being stopped, *compare* ORS 131.605-131.615, and in the case of apparent intoxication prevented from resuming his driving. Often that could be accomplished by other means. But detention beyond the needs of identifying, citing, and protecting the individual or 'grounding' him, especially detention for trial unless bail is made, comports with criminal rather than with civil procedure and is surely so perceived by the public."

*Brown*, 280 Or at 108. In a footnote, the court qualified those statements:

"Of course this single element does not turn all traffic offenses into criminal prosecutions. We feel safe in assuming that it is more important to the legislative scheme of the Oregon Vehicle Code to decriminalize traffic infractions than to retain the incompatible aspects of 'full custody' detention for those offenses that otherwise are effectively decriminalized. But with respect to DUII, where such detention is most likely to be used, it is one more reason to doubt that this aim has been accomplished."

*Id.* at 108 n 16. Interestingly, in discussing that factor, the court focused on the *possibility* of arrest and detention, that is, their availability within the pertinent statutory scheme; the court did not consider the import of that factor where an arrest and pretrial incarceration actually had occurred. This case presents an opportunity to consider that issue.

The use of pretrial arrest and detention procedures are unique to criminal prosecutions. A person may be arrested for a misdemeanor, ORS 133.310(1)(b), and held in jail for 36 hours or more before arraignment, ORS 135.010, and for up to 180 days between arraignment and trial, ORS 136.290; ORS 136.295(4)(a). In the case of a violation, by contrast, law enforcement options are much more limited. Enforcement officers are expressly forbidden from arresting a person for the commission of a violation, and they may stop and detain a person whom they have reasonable grounds to believe has committed a violation for only as long as it takes to establish the person's identity, conduct a reasonable investigation, and issue a citation. ORS 153.039.

Following its decision in *Brown*, this court has emphasized the uniquely criminal nature of arrest and pretrial detention in other contexts. For example, in *Easton v. Hurita*, 290 Or 689, 625 P2d 1290 (1981), the court held that the plaintiff motorist's complaint, challenging the lawfulness of his arrest and detention in a traffic infraction stop, stated a cognizable claim for relief in a civil action for false imprisonment. In so concluding, the court stated:

"our reasoning in [*Brown*] suggests that to put in jail a person arrested for a traffic infraction is constitutionally incompatible with decriminalizing traffic infractions and removing constitutional safeguards normally afforded to criminal defendants. As noted in *Brown*, however, for most

> minor traffic offenses it may be more important to decriminalize the traffic infraction than to retain the incompatible aspects of 'full custody' detention."

*Easton*, 290 Or at 697. Similarly, in *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), this court held that evidence discovered in a police officer's search of the defendant's car during a traffic stop for an open container violation should have been suppressed because the stop was for a traffic infraction and, under the applicable statute, the officer was not permitted to engage in the same law enforcement procedures for traffic infractions as for full custodial arrests.[10] The court stated that the legislative history showed that the legislature intended by that statute to avoid conferring on individuals stopped for traffic infractions all the procedural safeguards guaranteed under the Oregon Constitution for criminal prosecutions. *Id*. at 119-20. It followed, therefore, that, having been stopped for a traffic infraction, the defendant could not lawfully be subjected to a search beyond what was permitted by the infraction statute.

		In this case, as discussed above, defendant was part of a group of people participating in the "Occupy Portland" protests on October 11, 2011. She and 49 other defendants were arrested. Defendant was handcuffed and taken into custody, where she was booked and detained for several hours. She was later charged by information with one count of second-degree criminal trespass, a misdemeanor criminal offense. Law enforcement officers were permitted to take those actions *only* because the legislature chose to

---

[10] The court described the purpose and effect of the statute, ORS 810.410 (1981), in the following terms:

"[T]he legislature sought to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. The legislature intended to satisfy the concerns expressed in [*Brown*], and thus to permit only minimal intrusions on Oregon drivers stopped for traffic infractions. The words of ORS 810.410(3)(b) reflect that intent by requiring that any investigation be 'reasonably related to the traffic infraction, identification and issuance of citation.' ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction. A search that explores for evidence of other crimes or infractions is not 'reasonably related to the traffic infraction, identification and issuance of citation.' ORS 810.410(3)(b)."

*State v. Porter*, 312 Or 112, 119-20, 817 P2d 1306 (1991).

criminalize the offense of second-degree criminal trespass. The officers had the option on October 11, 2011, of merely citing defendant and the other protesters for violations, rather than arresting them for crimes. Had the officers chosen to cite the protestors for violations, however, the officers could not have arrested and detained them. Thus, the officers' decision to arrest defendant and the other protestors rather than cite them for violations was a practical choice with legal consequences.

As noted, the state contends that its subsequent election to treat the crime for which defendant was arrested and detained as a violation effectively decriminalized the proceeding. We do not agree. As this court stated in *Pierson v. Multnomah County*, 301 Or 48, 52, 718 P2d 738 (1986), "the trauma of an arrest and jail booking, and the stigma that flows from an arrest are well known." No subsequent election by the state to purportedly decriminalize the charge can change the fact that defendant was subjected to those uniquely criminal procedures and their stigmatizing effect. In Oregon, arrest records are available for employers, landlords, licensing agencies, and others to review. *See* ORS 181.560 (providing for release of arrest records to those who ask). When the Department of State Police releases a person's arrest record, that record includes not only the date of the arrest but also the "offense for which arrest was made." ORS 181.560(1)(b)(B). And, the state government is not the only depository of arrest records. Numerous counties post their arrest records online, complete with mug shots and identifying information, where anyone can view and download them.[11] Such adverse publicity is not erased merely because, at the prosecutor's discretion, an offense is later reduced from a crime to a violation. As the Maine Supreme Court stated in addressing a similar problem involving a prosecutor's election to proceed civilly after an arrest had occurred:

"The stigma caused by criminal pre-charging procedures will not disappear when the prosecutor elects to charge a civil infraction. The fact of an individual's arrest is public

---

[11] *See, e.g.*, http://e-airs.org/eAirsInternet (Lane County); www.co.marion.or.us/SO/lnstitutions/inmateoffender/ (Marion County); www.mcso.us/PAID (Multnomah County).

information and in many communities will be reported in a newspaper before a charging decision is docketed. Arrested as a criminal suspect, the accused is not likely to escape stigma merely because the conviction is [later] labeled civil. *** Indeed, the later adjudication will be for the identical conduct that [the pertinent statute] defines as a crime."

*State v. Freeman*, 487 A2d 1175, 1178 (Me 1985).

After the state's election, this case proceeded as the same action, for the same offense, with the same elements and the same maximum potential fine. The state merely proposed to change the remaining pretrial and trial procedures and eliminate the possibility of imposition of a 30-day jail sentence. There is no textual, historical, or logical support for the proposition that, for purposes of Article I, section 11, what began as a criminal proceeding with defendant's arrest, booking, and incarceration for a crime can, in the absence of her consent, be transformed without further constitutional consequence into a noncriminal proceeding. It may be that many defendants will acquiesce in a bench trial for a misdemeanor that is reduced to a violation under ORS 161.566. However, where, as here, the accused already has been subjected to pretrial arrest and detention, such a reduction does not deprive the accused of the right to a jury trial.

The petition for writ of mandamus is dismissed.