Argued and submitted January 19, decisions of the trial court and Court of Appeals reversed and remanded to the trial court with instructions September 30, reconsideration denied November 16, 1988

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## MARK WILBUR CARMICKLE,
*Petitioner on Review.*

## (DC B68-501; CA A41918; SC S34599)

762 P2d 290

Robert C. Homan, Eugene, argued the cause and filed the petition for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CAMPBELL, J.

## CAMPBELL, J.

We accepted review in this case to determine if a convicted criminal defendant can elect to refuse probation and demand that sentence be imposed. We hold that such a defendant may make such an election. Because of the result we do not reach secondary issues which the defendant raised in his petition for review.

On April 25, 1986, the defendant was arrested in this case on the charge of INITIATING A FALSE REPORT to the Eugene Police Department about a stolen car. On May 1, 1986, he was released on his own recognizance to report to his parole officer on a previous conviction. On July 31, 1986, an order was entered revoking the defendant's recognizance agreement because of his arrest the previous day on a ROBBERY IN THE THIRD DEGREE charge. After that the defendant remained in custody until his trial and conviction on September 30, 1986, in this case.

The defendant waived a jury and the trial court found him guilty of INITIATING A FALSE REPORT, which is a Class C misdemeanor with a maximum penalty of 30 days in jail and a fine of $500. ORS 162.375. After the trial court found the defendant guilty, the following occurred:

| | |
|---|---|
| DEPUTY DISTRICT ATTORNEY: | "Your honor, [recital of defendant's previous criminal record]. The State's concern is that the defendant be placed on probation in this matter with a requirement that the defendant have no contact with Mr. William Hemphill or any member of his family." |
| DEFENDANT'S ATTORNEY: | "I would like to address the issue of probation. Mr. Carmickle, by my count, has spent an excess of 30 days that can be credited toward sentence in this case. I would ask the court to, rather than place him on probation, to give him the sentence of, essentially, credit for time served. He is a person who does not do well in a supervised situation; a probationary or parole-type situation. He was paroled in May of this year and at this point in the time his parole status is still in effect. |

"* * * * *

"It would be our hope that he would be able to do whatever time the court feels is fair for this type of crime and be done with the case. I realize that the court still has power to impose a financial penalty, if it feels he has some ability to pay, however, given the fact that he stands to be incarcerated for perhaps six months or so on the other charge, * * * I think it would be appropriate to give him a straight sentence, particularly since he has already served the maximum of time possible in custody."

THE COURT: "I am going to suspend imposition of sentence for five years and I am going to put you on probation to the Corrections Division, and this will be concurrent with any probation."

DEFENDANT: "I don't want probation."

THE COURT: "You don't have a choice right now! I'm imposing 60 days in the Lane County Jail, with 60 days credit for time served, considered served."

DEFENDANT: "That's more than the maximum penalty. The maximum penalty is only 30 days."

DEFENDANT'S ATTORNEY: "I think that Mr. Carmickle is correct, its a C Misdemeanor.

"* * * * *"

THE COURT: "Right you are. OK, 30 days with 30 days credit."

DEFENDANT: "Your honor, if you're going to put me on probation, you might as well make it a felony and send me to the joint because I'm not going to do probation."

THE COURT: "If you don't do probation then you're probably going to come back here and I'm going to end up imposing a fine, and you'll have to pay a fine, but I'm not imposing that at this time."

DEFENDANT: "Obviously, your honor, all you're doing is delaying it, if you're going to give me a fine, give me a fine and get it over with. There is no way that I'm going to make five years probation when I can't even make a six month parole.

"* * * * *"

THE COURT: "I'll give you a copy of this. If you refuse to accept the conditions of probation, then you'll just have to be back in when you're out."

DEFENDANT: "You might as well just get it over with right now."

THE COURT: "This probably isn't the best time to discuss it. Think about it a little bit and then we'll talk about it again when you're out. The court's in recess."

On September 30, 1986, the trial court entered a JUDGMENT AND ORDER OF PROBATION TO THE CORRECTIONS DIVISION. It recited that the "Imposition of sentence is suspended for 5 years." The only special conditions of probation were: "30 days in the custody of the sheriff with 30 days credit for time served" and "defendant shall not contact, or be in or about the premises of, the victim William J. Hemphill or his family."[1] It also contained the notation: "Defendant refused to sign."

The defendant appealed to the Court of Appeals,

---

[1] William J. Hemphill was not a victim of the crime of INITIATING A FALSE REPORT. There was evidence introduced at the trial from which the trier of fact could have believed that the defendant damaged his vehicle by driving it into a wall and then continued to drive it until it became disabled in a cul-de-sac in front of Hemphill's house. The defendant then left the vehicle and proceeded on foot to Charlie's Poolroom from where he called the police and reported that his vehicle had been stolen. Hemphill identified the defendant to the police as the man that left the car in the cul-de-sac.

which affirmed without opinion. *State v. Carmickle,* 87 Or App 552, 743 P2d 185 (1987).

## SCOPE OF REVIEW

Because the State argues that our scope of review in this case is limited, we will first examine that matter.

██ ██ A criminal defendant has no constitutional right to appeal. *Gairson v. Gladden,* 247 Or 88, 90, 425 P2d 761 (1967). Appellate jurisdiction is limited and springs from statute. *State v. Curran,* 291 Or 119, 122, 628 P2d 1198 (1981). "An appeal is not a matter of absolute right, but a statutory privilege." *State v. Endsley,* 214 Or 537, 539, 331 P2d 338 (1958).

In this case the defendant's right to appeal to the Court of Appeals was derived from ORS 138.040, which provides:

"The defendant may appeal to the Court of Appeals from a judgment on a conviction in a district or circuit court, and may cross-appeal when the state appeals pursuant to ORS 138.060(3). Upon an appeal, or cross-appeal, any decision of the court in an intermediate order or proceeding may be reviewed, and any sentence of the court may be reviewed as to whether it exceeds the maximum sentence allowable by law or is unconstitutionally cruel and unusual. A judgment suspending imposition or execution of sentence or placing a defendant on probation shall be deemed a judgment on a conviction and shall not be subject to appeal after expiration of the time specified in ORS 138.071 except as may be provided in ORS 138.050 and 138.510 to 138.680. If in the judgment of the appellate court the punishment imposed by the sentence appealed from exceeds the maximum sentence allowable by law or is unconstitutionally cruel and unusual, the appellate court shall direct the court from which the appeal is taken to impose the punishment that should be administered."

The state in effect argues that the ORDER OF PROBATION was a "sentence" and that the defendant's appeal was limited "to whether it exceeds the maximum sentence allowable by law or is unconstitutionally cruel and unusual."

We disagree. ORS 138.040 specifically provides: "A judgment suspending imposition * * * of sentence or placing a defendant on probation shall be deemed a judgment on a

conviction * * *." The first phrase of the same statute provides: "The defendant may appeal to the Court of Appeals from a judgment on a conviction in a district * * * court * * *."[2]

This court has previously held that probation is not a sentence. In *State v. McClure,* 295 Or 732, 736, 670 P2d 1009 (1983) we said:

> "The state answers by arguing that probation is not the imposition of a sentence, relying on *State ex rel Dillavou v. Foster,* 273 Or 319, 322, 541 P2d 811 (1975). To further support its position, it contends that the statutory scheme contained in Chapter 137 of the Oregon Laws clearly separates the 'imposition of a sentence' from a grant of probation. We agree. Probation is an alternative to the imposition of a sentence. ORS 137.010."

We hold that an order of probation is appealable as a judgment on conviction and the appeal or review is not limited to whether it exceeds the maximum allowable by law or is unconstitutionally cruel and unusual as in the case of a sentence.

## THE HISTORY OF PROBATION IN OREGON

Probation was unknown at common law.[3] The term "probation" was first used by John Augustus, a boot-maker who lived in Boston, Massachusetts. Beginning in 1841 Augustus started the practice of having people released to him who were charged with the offense of being a common drunkard. Later people convicted of other offenses were released to him. He kept a journal in which he recorded his efforts to help over 1,100 probationers. Augustus is generally credited with being the father of probation and the first probation officer. Cohen and Gobert, The Law of Probation and Parole 7 (1983); Killinger, Kerper and Cromwell, Probation and Parole in the Criminal Justice System 22 (1976).

---

[2] *State v. Martin,* 282 Or 583, 580 P2d 536 (1978) cited in the dissent by Justice Jones is not in point. It was decided under the 1975 versions of ORS 138.040 and 138.050, which have been materially amended in 1977 and 1985.

[3] The United States Supreme Court in *Ex Parte United States,* 242 US 27, 52, 37 S Ct 72, 61 LEd 129 (1916) held that courts had no inherent power to indefinitely suspend the imposition or execution of sentence because such was inconsistent with the constitution and would amount "to an interference with both the legislative and executive authority as fixed by the Constitution." *See* Killinger, Kerper and Cromwell, Probation in the Criminal Justice System 25 (1976).

The General Laws of Oregon, 1845-1864, compiled and annotated by M. P. Deady, made no provision for parole or probation but gave the Governor "power to grant reprieves, commutations and pardons, after conviction, for all crimes; * * *." General Laws of Oregon, ch 33, § 333, p 449 (Deady 1845-1864).

The Oregon Legislature in 1905 by enacting chapter 177 gave the circuit courts power to grant parole to certain persons who had been convicted of a felony but who had not been delivered to the warden of the penitentiary. The persons who qualified were allowed to remain at large under the supervision of the court or under the supervision of a Prisoners Aid Society. The same legislature, by chapter 187, gave the governor the power to parole certain persons after they had served a part of their sentence in the penitentiary. In 1911 the legislature by chapter 127 created a Parole Board to report to the Governor on cases where it recommended that parole be granted. Chapter 176 of the 1915 legislature created a state parole officer to supervise the people paroled by the governor and the circuit courts.

In 1931 the legislature for the first time gave the trial courts authority to place criminal defendants on probation. Chapter 396 of Oregon Laws of 1931 provided in part:

"Section 1. The courts having jurisdiction of criminal or quasicriminal actions, including actions for violation of municipal ordinances when it shall appear that the best interests of the public as well as of the defendant will be subserved thereby, shall have power to suspend the imposition or execution of sentence for any crime or offense and also shall have power to place the defendant on probation for definite or indefinite period, not to exceed five years.

"* * * * *

"Section 3. The court shall determine and may at any time modify the conditions of probation and may include among them the following, or any other: That the probationer (1) shall avoid injurious or vicious habits; (2) shall avoid places or persons of disreputable or harmful character; (3) shall report to the probation officer as directed by the court; (4) shall permit the probation officer to visit him at his place of abode or elsewhere; (5) shall answer all reasonable inquiries on the part of the probation officer; (6) shall work faithfully at suitable employment; (7) shall remain within a specified

place; (8) shall pay his or her fine, if any, in one or several sums; (9) shall make reparation or restitution to the aggrieved parties for the damage or loss caused by offense, in an amount to be determined by the court; (10) shall support his dependents."

The same chapter provided that: "No probation officer, or clerical assistants appointed under this act shall receive any compensation from the state, any county or any municipality; * * *." Or Laws 1931, ch 396, § 5.

The 1931 legislature by chapter 397 also created a five-member state probation commission. In 1939 the legislature created a joint state board of parole and probation. Or Laws 1939, ch 266.

Although the probation laws of Oregon have been amended many times since 1931, the basic concept has remained the same. ORS 137.010(2) now provides in part:

"When a person is convicted of an offense, if the court is of the opinion that it is in the best interests of the public as well as of the defendant, the court may suspend the imposition or execution of sentence for any period of not more than five years. * * *"

ORS 137.540 now provides for general conditions of probation as follows:

"(1)   The court may place the defendant on probation, which shall be subject to the following general conditions unless specifically deleted by the court. The probationer shall:

"(a)   Remain under the supervision and control of the probation department.

"(b)   Abide by the direction of the probation department and its representatives.

"(c)   Promptly and truthfully answer all reasonable inquiries of the probation officer relating to probation performance.

"(d)   Truthfully report monthly at times and in a manner specified by the probation department or its representative.

"(e)   Remain in the State of Oregon until written permission to leave is granted by the probation department or its representatives.

"(f)   Find and maintain gainful full-time employment, approved schooling, or a full-time combination of both. Any

waiver of this requirement must be based on a finding by the court stating the reasons for the waiver.

"(g) Change neither employment nor residence without promptly informing the probation department or its representatives.

"(h) Permit the probation officer to visit the probationer or the probationer's residence or work site.

"(i) Submit to fingerprinting or photographing, or both, when requested by the probation department for supervision purposes.

"(j) Obey all laws, municipal, county, state and federal.

"(k) Pay fines, costs including probation costs, attorney fees or restitution or any combination thereof ordered by the court on a schedule of payments determined by the court."

*Can a criminal defendant refuse probation and demand that sentence be imposed?*

Although the Oregon Court of Appeals has previously considered this matter,[4] it is a question of first impression for this court.

Cases on this subject from other jurisdictions are collected in an annotation entitled: "Right of Convicted Defendant to Refuse Probation." 28 ALR 4th 736 (1984). The annotation states that Alabama, Arizona, California, Idaho and Minnesota "have held or recognized that where the imposition or the execution of the sentence of a convicted defendant is suspended and the defendant is offered probation, the defendant may refuse the probation and elect to serve the suspended sentence or to demand the imposition of a sentence." *Id.* at 737.[5] Other states which have reached the same result are Alaska, North Carolina, South Dakota and Wisconsin.[6]

---

[4] *State v. Crites,* 70 Or App 327, 689 P2d 353, *rev den* 298 Or 334 (1984); *State v. Culbertson,* 29 Or App 363, 372, 563 P2d 1224 (1977).

[5] *Persall v. State,* 31 Ala App 309, 16 So2d 332 (1944); *State v. Montgomery,* 115 Ariz 583, 566 P2d 1329 (1977); *People v. Osslo,* 50 Cal 2d 75, 323 P2d 397, *cert den* 357 US 907 (1958); *Franklin v. State,* 87 Idaho 291, 392 P2d 552 (1964); *State v. Randolph,* 316 NW 2d 508 (Minn 1982).

[6] *Brown v. State* (Alaska) 559 P2d 107 (1977); *State v. Ritchie,* 243 NC 182, 90 SE2d 301 (1955); *State v. Jackson,* 272 NW2d 102, 104 (SD 1978); *Garski v. State,* 75 Wis 2d 62, 248 NW2d 425, 433 (1977).

The opposite view is taken in a 1937 Fifth Circuit case, *Cooper v. United States,* 91 F2d 195, 199 (5th Cir 1937) where the court held, "We do not agree with appellants' contention that probation, like pardon, may be refused by the convicted person." However, in a later case by the same circuit, *United States v. Smith,* 414 F2d 630, 636 (5th Cir 1969), *rev'd sub nom on other grounds, Schacht v. United States,* 348 US 58, 26 L Ed 2d 44, 90 S Ct 1555 (1969), the court said, "Smith could have rejected probation and elected prison." In *Birnbaum v. United States,* 107 F2d 885, 887 (4th Cir 1939), the court held, "a defendant may at any time insist upon the imposition of sentence." In *United States v. Alexander,* 743 F2d 472 (7th Cir 1984), the court noted that a defendant generally may reject probation and elect that sentence be imposed.

The only states that we have been able to find which in effect hold that a defendant cannot refuse probation are Ohio and Nebraska. *See City of Lima v. Beer,* 107 NE2d 253, 255 (Ohio 1950); *State v. Kinney,* 350 NW2d 552, 556 (Neb 1984).

Cohen and Gobert, The Law of Probation and Parole 205 (1983), state:

> "The offender, faced with the possibility of avoiding prison, usually requests probation or parole and is delighted to accept any reasonable conditions. In those rare cases where the offender seeks to reject probation or parole because of onerous conditions, the courts have generally recognized the right to do so, although a few authorities support the contrary view.

> "* * * Any right to refuse probation or parole, moreover, is limited. The offender can only accept or reject the entire package of conditions; there is no right to accept some conditions but not others."[7]

In 1933 the MacMillan Company published Probation and Criminal Justice edited by Sheldon Glueck, Professor of Criminology, Harvard Law School. A chapter in that book entitled "Some Legal Problems Raised by Probation" was written by Sam B. Warner, Professor of Penal Legislation and

---

[7] The only probation cases that the authors, Cohen and Gobert, cite to "support the contrary view" are *Cooper v. United States,* 91 F2d 195 (5th Cir 1937); *State v. Kinney,* 217 Neb 701, 350 NW2d 552 (1984); and *State v. Crites, supra,* note 3.

Administration, Harvard Law School. In that chapter at page 27 Professor Warner states: "No defendant can be forced to accept probation or suspended sentence. Everywhere the defendant can compel the judge to pass judgment with reasonable celerity."[8]

Killinger, Kerper and Cromwell, Probation and Parole in the Criminal Justice System 54-55 (1976) state:

"The general rule is that probation cannot be imposed upon a defendant without his consent. If conditions are imposed without the consent of the defendant, and then violated, there is a question of whether or not the violation can be used to revoke probation. The laws of several states thus provide that the probationer must be furnished with a written statement of the terms of his probation and that he must accept the conditions of probation before being given his liberty." (Footnotes omitted.)

Oregon does not have a statute which requires a defendant to accept a written statement of the terms of his probation before he is given his liberty. However, the printed form which this defendant was asked to sign contained the following:

"I understand and accept the Conditions of Probation under which I have been released by the sentencing Court. I agree to abide by and conform to them and fully understand my failure to do so may result in the revocation of my probation by the Court."

Since probation is a creature of statute, we must look to the statutes of Oregon to determine if the legislature intended to give convicted criminal defendants the election to refuse probation and demand that sentence be imposed. The statutory scheme spans a period of time from 1931 through 1987. There is no recorded legislative history for the early years. In the later years there is none which shows the legislature's clear intent as to our question.

From time to time after 1931, the legislature authorized the trial courts to impose special conditions of probation which invaded the defendant's rights under the Oregon and

---

[8] Probation and Criminal Justice (1933) was reviewed by Wayne L. Morse, Dean of the Oregon Law School, 12 Or L Rev 258 (1933). He commented that it was an excellent book that deserved wide reading.

United States constitutions. Those special conditions are now codified under ORS 137.540 which in part provides:

"(2)　In addition to the general conditions, the court may impose special conditions of probation for the protection of the public or reformation of the offender, or both, including, but not limited to, that the probationer shall:

"* * * * *

"(b)　Submit to polygraph examination by a qualified polygraph examiner designated by the court or probation officer under terms and conditions set by the court.

"* * * * *

"(e)　Submit to random urinalysis at the direction of probation officer.

"* * * * *

"(j)　Submit to breath test or blood test to determine blood alcohol content upon request of a probation officer having reasonable grounds to believe the results would disclose evidence of a probation violation. This condition may be set when it is reasonably related to the nature of the offense or treatment of the offender.

"(k)　Neither own, possess nor control any firearm or any other specified weapon.

"(L)　Submit person, residence, vehicle and property to search by a probation officer having reasonable grounds to believe such search will disclose evidence of a probation violation. This condition may be set when it is reasonably related to the nature of the offense or treatment of the offender."

The point is that if the legislature is going to ask a defendant to waive his or her constitutional rights, then necessarily the defendant must be given a choice. A choice of what? A choice to accept probation and waive the constitutional rights or reject probation and keep the constitutional rights.

Although in 1931 the Oregon legislature may not have intended to require a defendant's consent to probation, it is apparent that since that time, by giving the trial courts authority to impose special conditions of probation which invade the defendant's constitutional rights, it has in effect given the defendant an election to accept or reject probation.

It could be argued that in this particular case the

defendant was not given the right to elect to reject probation because none of the special conditions of probation required him to waive any of his constitutional rights. However, we hold that the legislature intended that in order to have an efficient probation system, all probationers should be treated alike and each should have an election to reject probation.

■ We hold only that any convicted criminal defendant has the right to refuse probation and demand that sentence be imposed. We do not hold that because a defendant has accepted probation his "waiver" of his constitutional rights is necessarily "free and voluntary." That is a different question and we do not reach it in this case. *See* LaFave, Search and Seizure, A Treatise on the Fourth Amendment 133 (2nd ed 1987).

The trial court and the Court of Appeals are reversed. This case is remanded to the trial court to vacate the ORDER OF PROBATION and impose sentence upon the defendant.

**JONES, J.,** dissenting.

The sentencing judge imposed a very questionable sentence, which in turn has led a majority of this court to an equally questionable decision.

ORS 138.040 clearly provides that "any sentence of the court may be reviewed as to whether it exceeds the maximum sentence allowable by law or is unconstitutionally cruel and unusual," and nothing else. ORS 138.040 does allow an appeal for trial error in addition to the very restricted appeal of a sentence. The majority's reading of ORS 138.040 is that a judgment suspending imposition of a sentence placing a defendant on probation is a judgment on a conviction but is not a sentence. Such a strained construction cannot be justified. Of course a sentence to probation is a sentence.

In *State v. Martin,* 282 Or 583, 580 P2d 536 (1978), the trial judge suspended execution of sentence and placed the defendant on probation for five years, ordering that the defendant not associate with her husband. This court referred to identical language in the companion statute to ORS 138.050:

> "Under a plain reading of this statute [ORS 138.050], a probation order is appealable if it is 'a judgment on a conviction.' ORS 138.040 provides, in part, that a 'judgment * * *

placing a defendant on probation shall be deemed a judgment on a conviction * * *.' In the absence of clear legislative intent to restrict this provision to ORS 138.040, we hold that this provision makes a probation order a judgment on conviction for the purposes of ORS 138.040 and is thus appealable. * * *"
*Id.* at 587.

The court then reviewed the *sentence* of probation within the restricted review of sentences under the former statute, which contained the same language as the present statute limiting review, except for consideration of proportionality, which has since been deleted. ORS 138.050 (1975) (amended by Or Laws 1977, ch 372, § 14).

In sum, this court has interpreted ORS 138.050 to include review of a judgment of probation as a sentence. If a judgment of probation is a sentence under ORS 138.050, it must be a sentence under ORS 138.040. If it is, we go no further with this case. The sentence was within the statutory limits. The sentence may well have been unusual and called for a totally unwarranted waste of the state's precious corrections resources, but defendant does not raise these grounds for relief.

Incidentally, the sentencing judge thought she had imposed a sentence. She wrote afterwards, "the *sentence* imposed in this case is presently on appeal." (Emphasis added.) As the old saying goes, if it looks like a duck, acts like a duck and sounds like a duck, by golly, it's a duck. The majority has distorted a plain old sentence into a non-sentence and, indeed, a non sequitur.

On the second issue, the majority has trapped itself into allowing every criminal defendant receiving a probation sentence to tell the sentencing judge what is or is not acceptable to him or her and, at the same time, to direct how much money the state must spend to incarcerate the defendant.

In discussing the first issue, I referred to ducks. With respect to the second issue, we have a classic example of a tail wagging a dog. Who is in charge? The offender or the judge? Under the meager corrections resources we have, coupled with today's decision in this case, a Class C felony offender can refuse probation that requires, for example, mental health treatment or work release, and instead can demand being sentenced to the Oregon State Penitentiary for the five-year

maximum, knowing the actual sentence served will average 42 days with a maximum of one year on parole before final discharge. Convicted criminals should not be able to order off of their own selected corrections menu. I would hope a sentencing judge would know more about what is an appropriate sentence than the offender.

Of course, if a judge encounters one of these offenders who refuses probation, the judge can treat that refusal as a probation violation. The offender does not have to go out and commit another crime to violate probation. But every violation works against the offender's record and is often grounds for additional sanction. It should be. Failure to cooperate with the court should not be tolerated or ignored.

## CONCLUSION

This case should never have come to this court. It involves a sanction so minor — a maximum fine of $750 — that no trial court should have ever let the case go this far. The court should have found a violation and imposed the fine. Because this was not done, probably more than ten times that much money has been squandered in this appeal and, even worse, questionable law has been injected into the books with the decision of the majority.

Peterson, C. J., joins in this dissenting opinion.

**GILLETTE, J.,** dissenting.

I should like to be able to join in the first part of the separate dissenting opinion of Jones, J., dealing with the appropriate scope of this court's review pursuant to ORS 138.040 and 138.050. I should like to do so because the interpretation the majority today places on its scope of review of sentences of probation — and they are sentences, whatever else the majority is pleased to call them — is awry.

The problem is that this court's construction of the statutory scheme went awry in 1983, in *State v. McClure,* 295 Or 732, 670 P2d 1009 (1983). The issue in that case was whether time spent in a county jail between a person's arrest and trial had to be credited against a period of county jail incarceration ordered as a condition of probation. At issue was a portion of ORS chapter 137 dealing with credit for time

served. This court explained the problem and its answer to it this way:

> "If defendant had actually received a sentence of imprisonment, either in a county jail or in the custody of the Corrections Division, the statutes make it clear that his post-arrest imprisonment time * * * must be credited to his sentence. In the present case, however, the judge suspended the imposition of defendant's sentence and placed him on probation for two years. * * *

> "Defendant's basic position is that the statutes * * * require that he be given credit for the time he was already confined. * * *

> "The state answers by arguing that probation is not the imposition of a sentence * * * [citation omitted]. * * * [I]t contends that the statutory scheme contained in Chapter 137 of Oregon Laws clearly separates the 'imposition of a sentence' from a grant of probation. *We agree. Probation is an alternative to the imposition of a sentence. ORS 137.010. This defendant has not received a sentence of imprisonment, and the statutes mandating credit for pretrial confinement do not apply.*"

*Id.* at 735-36 (emphasis supplied).

Of course, I recognize that we are talking about a different statute in this case. But *McClure* seems to stand for the proposition, all too readily acceded to (in my opinion), that the imposition of probation is not a sentence, *as a matter of statutory construction.* The interworkings of ORS Chapters 137 and 138 are too close for me to contemplate calling the imposition of probation a "sentence" in one chapter, but not the other. Where legislative correction is possible, I try to adhere even to those pieces of statutory construction I think wrong. *McClure* belongs in that category but, because I feel bound by it, I am not able to join in the first part of the separate dissenting opinion.

Happily (for me), no such constraints are present with respect to the second half of that opinion. It is the job of a trial judge to identify the circumstances most likely to turn an offender into a useful citizen. If the offender could do that for himself, the chances are that he would not be before the trial judge in the first place. Yet today we make the offender, not the judge, the master of his own dispositional alternatives. Courts commonly are unjustly decried for allegedly handing a

prisoner the keys to get out of jail. Now, with the overcrowding problem we currently are experiencing, it will more fairly be possible to decry this court, at least, for doing something even more bizarre — handing a prisoner the keys to get *in.*

I dissent.