No. 1040          December 3, 2025          415

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS JAMES FREEMAN,
aka Thomas J. Freeman,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR26210; A181812

Adrian L. Brown, Judge.

Submitted February 25, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals from a judgment revoking his probation and imposing a sentence of 26 months in prison. In a single assignment of error, defendant argues that he was entitled to a jury trial on the allegations that he violated his probation by committing new crimes. Article I, section 11, of the Oregon Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury ***." Defendant's assignment of error raises an issue of first impression. Applying the five-factor test set forth in *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 101-08, 570 P2d 52 (1977), we hold that a probation violation hearing is not a "criminal prosecution" under Article I, section 11, so defendant did not have a state constitutional right to a jury at the hearing. We therefore affirm.

FACTS

In August 2022, defendant pleaded guilty to attempted delivery of methamphetamine and recklessly endangering another person. The trial court dismissed other charges, dismissed another pending criminal case, resolved a pending probation violation case, and sentenced defendant to 36 months of probation, with a condition that the presumptive sentence of 25 to 26 months of incarceration would be imposed if his probation was subsequently revoked. At the hearing on his plea and sentencing, defendant expressly acknowledged that the presumptive sentence was "hanging over [his] head for a violation of the conditions of probation." Those conditions included the general conditions listed in ORS 137.540, as well as special conditions of probation, including a condition prohibiting the purchase, possession, or transportation of firearms or ammunition.

About nine months later, defendant's probation officer arrested defendant. According to the probation report, the probation officer learned that defendant had not followed through with his substance use treatment, that defendant was not living where he was supposed to be, and that defendant was driving a vehicle even though he had been instructed not to do so without a valid license and

insurance. According to the report, when the probation officer and a sheriff's deputy went to the motel where defendant was staying, they observed a handgun in plain view inside defendant's vehicle, and in his motel room they could see a backpack with a box of ammunition inside it. Defendant refused to consent to a search. After obtaining warrants, the deputy found several firearms, ammunition, and a large quantity of suspected methamphetamine in the backpack. In the vehicle, the deputy found additional weapons, including a stun gun and knives. The probation officer recommended revoking probation.

Before the probation violation hearing, defendant filed a jury trial demand arguing that he had a right to a jury trial "for any new crime allegations as alleged in the probation report." After his arrest, defendant was indicted for attempted unlawful delivery of methamphetamine, unlawful possession of methamphetamine, three counts of felon in possession of a firearm, and one count of felon in possession of a restricted weapon. Defendant expressed concern about having his probation revoked based on the allegations forming the basis for those new criminal charges. The state responded that it was not asking the court to make findings relating to the new criminal charges, and, in any event, the state was not required to prove that defendant was guilty of the new charges to show that he had violated the conditions of his probation.

The trial court noted that there was a difference between a probation violation hearing and a criminal prosecution because, although both can lead to "a taking away of someone's personal liberties," a revocation of probation was not an "additional conviction." The trial court therefore denied defendant's request for a jury.

After hearing testimony from the sheriff's deputy and the probation officer, the trial court found that defendant violated several conditions of his probation, including the requirement to engage in substance use treatment, not to change residence without prior permission, and to consent to searches. The trial court also found that defendant failed to obey all laws by driving without a valid license and insurance, and that he possessed prohibited kinds of

knives and ammunition in violation of the conditions of his probation. The trial court revoked probation and sentenced defendant to 26 months in prison consistent with the original sentencing judgment.

ANALYSIS

On appeal, in a single assignment of error, defendant renews his argument that he had a right to a jury at the probation violation hearing under Article I, section 11, based on the allegations that he had committed new crimes.

We review a lower court's interpretation of a constitutional provision for legal error. *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999). There is "no easy test" for when the imposition of a sanction is a "criminal prosecution" within the meaning of Article I, section 11. *Brown*, 280 Or at 101-02. In making that determination, the *Brown* court set out five factors to consider: (1) the type of offense; (2) the prescribed penalty; (3) the collateral consequences; (4) the "[p]unitive significance" of the proceeding, including whether a judgment is "stigmatizing or condemnatory"; and (5) whether pretrial procedures associated with a criminal proceeding, including arrest and detention, are allowed. *Id.* at 102-08. The *Brown* court explained that all of the factors "are relevant, but none is conclusive." *Id.* at 102.

In *Brown*, the court considered the legislature's attempt to classify a first offense for driving under the influence of intoxicants as a noncriminal "traffic infraction" to which criminal constitutional protections did not apply. *Id.* at 97. After applying the five-factor test, the court concluded that the offense retained "too many penal characteristics not to be a 'criminal prosecution' under Article I, section 11 of the constitution." *Id.* at 109.

In *State v. Benoit*, 354 Or 302, 311 P3d 874 (2013), the court came to a similar conclusion. The court considered a charge for the misdemeanor offense of criminal trespass that had been reduced to a violation by the prosecutor's election. Applying the five-factor test from *Brown*, the court determined that the most important factors under the circumstances were the type of offense, which the legislature had declared to be a crime, and the fact that the defendant

had been subject to pretrial arrest and detention. *Id.* at 312. The court therefore concluded that the defendant was entitled to a jury trial for the offense under Article I, section 11. The court came to a similar conclusion in *State v. Fuller*, 354 Or 295, 300-01, 311 P3d 861 (2013), a case in which the defendant's theft-related charges had been reduced to violations.

By contrast, in *State v. Whitten*, 278 Or App 627, 628, 379 P3d 707 (2016), we determined that the defendant's traffic violation proceeding was not a "criminal prosecution" requiring criminal constitutional protections. Applying the five-factor test, we explained, among other points, that the offense of failing to obey a traffic control police officer was not a crime at common law, the penalty for the offense was a relatively small fine, the defendant did not identify any collateral consequences, the offense was not stigmatizing, and—although the defendant was initially charged with a misdemeanor and subjected to pretrial criminal procedures—the state subsequently dismissed the misdemeanor charge. *Id.* at 632-38.

Here, in arguing that he had a right to a jury trial under the state constitution at his probation violation hearing, defendant argues that the case "is controlled by *Benoit*." Defendant points out that he was arrested and jailed for committing new crimes, and, after the hearing, the trial court revoked his probation and imposed a sentence of 26 months in prison. The state responds that a probation violation hearing is neither a criminal prosecution nor a proceeding with the character of a criminal prosecution, so the trial court did not err when it denied defendant's request for a jury.

In addressing those arguments, we begin by briefly considering the nature of probation and probation violation hearings. Probation is a type of sentence for a crime, and it is an alternative to incarceration. *See* ORS 137.010(4) (describing a "sentence of probation").[1] Persons placed on probation are usually subject to general conditions of probation,

---

[1] Although probation was not originally considered a sentence, in 1993 the legislature amended ORS 137.010 to explicitly make probation a sentence. *See* Or Laws 1993, ch 14, § 1.

including a prohibition on changing residence without prior permission, and a requirement to consent to searches. ORS 137.540(1). In addition, courts may impose "any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both." ORS 137.540(2).

"For defendants sentenced for felonies committed on or after November 1, 1989, the court that imposed the probationary sentence may revoke probation supervision and impose a sanction as provided by rules of the Oregon Criminal Justice Commission." ORS 137.545(5)(b). In a felony case, "[t]he decision to revoke probation is discretionary and may be exercised upon a finding that the offender has violated one or more of the conditions of probation, or that the offender has participated in new criminal activity." OAR 213-010-0001. The function of a probation revocation proceeding

> "is not to punish [the] defendant for a new crime. *** Rather, the function is to determine whether to impose or execute a sentence for the offense of which [the] defendant has already been convicted and for which probation was granted. The initial decision to place [the] defendant on probation was a decision to forego complete denial of liberty by incarceration in favor of a judicially-supervised period of restricted liberty in the hope that the purposes of rehabilitation *** and the protection of the public can be achieved by the lesser deprivation of liberty."

*State v. Eckley*, 34 Or App 563, 567, 579 P2d 291 (1978) (internal citations omitted). "[T]he Criminal Justice Commission did not intend to authorize revocation absent a violation of a condition of supervision or the commission of a new crime." *State v. Kelemen*, 296 Or App 184, 191, 437 P3d 1225 (2019).

Under the federal constitution, a probationer has due process rights at a probation violation hearing including the "right to confront and cross-examine a witness ***, unless the state demonstrates good cause to deny that right." *State v. Martin*, 370 Or 653, 658, 522 P3d 841 (2022). However, the protections guaranteed by the Sixth Amendment to the United States Constitution are "generally not available in

probation revocation proceedings. A probation revocation proceeding is not tried to a jury, and it requires only that the state prove the probation violation by a preponderance of the evidence, not beyond a reasonable doubt." *Id.* at 668. "Probation revocation hearings are conducted with less formality than a criminal trial." *State v. Donovan*, 305 Or 332, 335, 751 P2d 1109 (1988).

Although a defendant does not have a federal right to a jury at a probation violation hearing, here, defendant raises the question of whether he has that right under the state constitution when the probation violation is based at least in part on allegations of new crimes. To answer that question, we apply the five-factor test from *Brown*, 280 Or at 102-08.

Starting with the first *Brown* factor, we consider the type of offense, including whether it was "a crime at common law, or at the time the constitution was adopted, or for a long time thereafter." *Id.* at 102. An allegation of a probation violation does not resemble a crime at common law. "In 1931 the legislature for the first time gave the trial courts authority to place criminal defendants on probation." *State v. Carmickle*, 307 Or 1, 8, 762 P2d 290 (1988). Probation is "a creature of statute" that did not exist in Oregon prior to that time. *Id.* at 12. We have previously determined that the first *Brown* factor weighed against a defendant charged with the offense of failing to obey a traffic control police officer in part because it was not a crime at common law. *Whitten*, 278 Or App at 632-33. Here, we likewise conclude that the first *Brown* factor weighs against defendant.

"[P]robation revocation is not a criminal proceeding. It does not require proof of an offense and does not punish a new offense." *State v. Gonzalez*, 212 Or App 1, 4, 157 P3d 266 (2007) (internal quotation marks omitted). A probation violation can be—but does not have to be—based on allegations of a new crime. *See Kelemen*, 296 Or App at 192 (explaining that "the Criminal Justice Commission did not intend to authorize the revocation of probation in the absence of a finding that an offender had violated the conditions of probation either by committing a new crime *or in some other way*" (emphasis added)).

Here, defendant argues that he had a right to a jury because the state alleged that he violated his probation by committing new crimes. But defendant was not prosecuted for those new crimes at the probation hearing. Indeed, the state indicated that it would not rely at the probation hearing on the allegations underlying the new charges for possession of firearms and controlled substances. And in concluding that the state proved that defendant violated the conditions of his probation, the trial court relied on evidence that defendant failed to engage in substance use treatment, changed his residence without permission, possessed knives and ammunition, drove without a valid license or insurance, and failed to provide consent to searches. Thus, a probation violation hearing does not have to be based on allegations of new crimes, which is an additional reason why the first *Brown* factor weighs against defendant.[2]

The second *Brown* factor is the "penalty," and the Supreme Court has explained that the "prescribed penalty is generally regarded as the single most important criterion" in determining whether a proceeding qualifies as a "criminal prosecution" under Article I, section 11. *Brown*, 280 Or at 103. Certainly, a probation violation can result in a range of penalties or sanctions against the probationer. *See* ORS 137.593 - 137.595 (describing sanctions for probation violations). Here, defendant points out that he was sentenced to 26 months in prison. But that sentence was not a new penalty; instead, it was the imposition or execution of a preexisting penalty. *See Eckley*, 34 Or App at 567 (explaining that the function of the hearing "is to determine whether to impose or execute a sentence for the offense of which [the] defendant has already been convicted and for which probation was granted"). Because the purpose of the probation violation hearing was to determine whether defendant's conduct warranted executing or imposing a preexisting sentence of incarceration—one that defendant expressly acknowledged was "hanging over [his] head" when he entered his plea—we conclude that the second *Brown* factor also weighs against defendant.

---

[2] We express no opinion on whether a defendant whose probation is revoked based only on allegations of new crimes would be entitled to a jury trial under Article I, section 11. That did not occur here, and, in any event, defendant does not develop that argument.

The third and fourth *Brown* factors are the "[c]ollateral consequences" and the "punitive significance" of the proceeding, including whether the judgment "carries stigmatizing or condemnatory significance." *Brown*, 280 Or at 105-06. Defendant does not address the collateral consequences of a probation violation hearing, which likely vary from case to case, and we decline to develop that argument for him. *State v. Bonilla*, 358 Or 475, 493-94, 366 P3d 331 (2015) (declining to consider undeveloped argument). That factor therefore weighs against defendant or at least does not weigh in his favor. With regard to the fourth factor, a judgment revoking probation can be characterized as carrying "the stigma of condemnation," *see Brown*, 280 Or App at 107, but, once again, much, if not all, of that stigma derives from the underlying conviction, not from the decision to revoke probation. We therefore conclude that the fourth *Brown* factor also weighs against defendant or, at least, it does not weigh in his favor.

Finally, we consider whether the proceeding involves pretrial practices of arrest and detention. *Id.* at 108. A probationer is subject to arrest and detention pending a hearing on the probation violation. *See* ORS 137.545(2), (3). Here, defendant was arrested and detained, and he relies on that circumstance to argue that he was entitled to a jury at the probation hearing. *See Benoit*, 354 Or at 316 (determining that subjecting the defendant to "those uniquely criminal procedures" weighed in favor of finding that the proceeding was a criminal prosecution).

However, in *Whitten*, 278 Or App at 637-38, we determined that a proceeding was not a criminal prosecution, even though the defendant was arrested, booked, and detained for interfering with a peace officer, and, as the court explained in *Brown*, 280 Or at 102, no one factor is "conclusive." Even accepting that the fifth *Brown* factor weighs in defendant's favor, because the others do not or weigh against him, we conclude that defendant had no right to a jury at his probation violation hearing under Article I, section 11. Therefore, the trial court did not err in denying the request.

Affirmed.